# THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| 9 SQUARE IN THE AIR, LLC, a Missouri limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MOUNTAINVILLE COMMERCE, LLC, d/b/a CASTLESQUARES d/b/a CASTLE SPORTS, a Utah limited liability company; BART BOGGESS, an individual; JERRY BOGGESS, an individual; and IAN BOGGESS, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:22-cv-00335-HCN-JCB<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Jared C. Bennett |

District Judge Howard C. Nielson referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Plaintiff 9 Square in the Air, LLC's ("9 Square) Motion for Leave to File Amended Complaint.[2] The court heard oral argument on the motion on March 1, 2023, and, at the conclusion of the hearing, took the motion under advisement.[3] Having carefully considered the parties' written memoranda and counsel's oral arguments, the court grants 9 Square's Motion for Leave to File Amended Complaint.

---

[1] ECF No. 4.

[2] ECF No. 27.

[3] ECF No. 33.

## BACKGROUND

9 Square initiated this action against Defendants Mountainville Commerce, Bart Boggess, Jerry Boggess, and Ian Boggess (collectively, "Defendants") on May 19, 2022.[4] In its initial complaint, 9 Square asserted causes of action for alleged trade dress infringement under the Lanham Act,[5] violations of the Utah Trade in Advertising Act,[6] violations of the Utah Unfair Competition Act,[7] and related torts under Utah common law. Subsequently, counsel for Defendants entered their Notice of Appearance and filed for an extension of time to answer the Complaint, which they eventually did.[8]

On August 10, 2022, the Court entered the original scheduling order in this case, which established August 15, 2022 as the deadline for the parties' exchange of Initial Disclosures.[9] Although 9 Square received Defendants' Initial Disclosures on August 15, 2022, 9 Square did not receive Defendants' accompanying documents to their Initial Disclosures until October 27, 2022. The deadline to amend pleadings was October 14, 2022.[10]

What followed was several months of the parties' attempts to schedule mediation, which was ultimately held on November 9, 2022. The parties did not reach a settlement.

---

[4] ECF No. 2.

[5] 15 U.S.C. § 1125 et seq.

[6] Utah Code §§ 13-11a-3(a).

[7] Utah Code §§ 13-5a-101 et seq.

[8] ECF Nos. 14-16, 20.

[9] ECF No. 23.

[10] Id.

On December 2, 2022, the parties each served their first set of discovery requests. These requests sought, among other things, discovery regarding Defendants' use of 9 Square's trademarked name, "9 Square in the Air" and the likelihood of consumer confusion because of this alleged use.

On January 6, 2023, a week prior to the deadline that the parties had set for responses to discovery requests, 9 Square sought Defendants' stipulation to amend their complaint and indicated that, because the amendment could affect responses to discovery, 9 Square was "amenable to [Defendants] having the opportunity to propound new/revised discovery requests."[11] Defendants declined. On January 13, 2023, the parties filed a Stipulated Motion for Amended Scheduling Order, in which the parties stipulated to a 60-day extension of all outstanding, current deadlines.[12] However, Defendants expressly declined to agree to an extension of the amended pleading deadline and left that issue for motion practice. The court granted the stipulated motion and entered a new scheduling order.[13] 9 Square filed the instant motion for leave to amend its complaint on January 18, 2023.[14]

9 Square's proposed amended complaint seeks to add claims for trademark infringement under the Lanham Act.[15] Specifically, the proposed amended complaint adds allegations about Defendants' use of 9 Square's trademarked name and inaction to alleviate consumer confusion

---

[11] ECF No. 30 at 18.
[12] ECF No. 25.
[13] ECF No. 26.
[14] ECF No. 27.
[15] 15 U.S.C. § 1125 *et seq.*

and distinguish its product from that of 9 Square.[16] The last day to serve written discovery was December 2, 2022.[17] The close of fact discovery is March 17, 2023.[18]

## LEGAL STANDARDS

"Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4) govern where, as here, a party seeks leave to amend a pleading after the deadline for amending set in a scheduling order has passed."[19] In the Tenth Circuit, courts apply a two-step analysis based on both Rule 16(b) and Rule 15(a) when deciding a motion to amend that is filed beyond the scheduling order deadline."[20] Under the first step, the court must determine "whether the moving party has established 'good cause' within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion."[21] This is because Rule 16(b)(4) directs that a court-issued scheduling order "may be modified only for good cause and with the judge's consent."[22] "Good cause" under Rule

---

[16] ECF No. 27-2 at ¶ 35, 36, 48, 49, 51, 58, 59, 60, 61, 62, 64, 67, 71.

[17] ECF No. 26.

[18] *Id.*

[19] *C.R. Bard, Inc. v. Med. Components, Inc.*, No. 2:12-CV-00032-RJS-DAO, 2021 WL 1842539, at *2 (D. Utah May 7, 2021) (citing *Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009)); *see also Bylin*, 568 F.3d at 1231 ("Rule 15 governs amendments to pleadings generally, Rule 16 governs amendments to scheduling orders.").

[20] *StorageCraft Tech. Corp. v. Persistent Telecom Sols., Inc.*, No. 2:14-CV-76-DAK, 2016 WL 3435189, at *8 (D. Utah June 17, 2016); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (explaining that a party seeking leave to amend after a scheduling order deadline must satisfy both Rule 16(b) and Rule 15(a)).

[21] *StorageCraft*, 2016 WL 3435189, at *8.; *see also Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014) (adopting the position that "parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so").

[22] Fed. R. Civ. P. 16(b)(4).

16 is a "more stringent standard than the standards for amending a pleading under Rule 15."[23] It "requires diligence," meaning the party moving for amendment "cannot establish good cause if [it] knew of the underlying conduct but simply failed to raise its claims."[24] Rule 16's good cause requirement may be satisfied "if a plaintiff learns new information through discovery or if the underlying law has changed."[25] However, "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend."[26] District courts are "afforded wide discretion" in determining whether the movant has shown good cause.[27]

If a court determines that the movant has shown good cause, it will then "proceed to determine if the more liberal Rule 15(a) standard for amendment has been satisfied."[28] This standard provides that the "court should freely give leave [to amend] when justice so requires."[29] Under Rule 15, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[30] The Court of

---

[23] *Bylin*, 568 F.3d at 1231.

[24] *Husky Ventures, Inc., v. B55 Investments, Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (quotation simplified).

[25] *Gorsuch*, 771 F.3d at 1240.

[26] *Tesone v. Empire Mktg. Strategies*, No. 17-CV-02101-MEH, 2019 WL 8223285, at *2 (D. Colo. Jan. 17, 2019) (quotations and citation omitted).

[27] *Bylin*, 568 F.3d at 1231.

[28] *StorageCraft*, 2016 WL 3435189, at *8.

[29] Fed. R. Civ. P. 15(a)(2).

[30] *Bylin*, 568 F.3d at 1229 (quotation simplified).

Appeals for the Tenth Circuit has acknowledged "the purpose of [Rule 15] is to provide litigants the maximum opportunity for each claim to be decided on the merits rather than on procedural niceties."[31]

**ANALYSIS**

For the reasons stated below, the court grants 9 Square's motion. First, it has demonstrated good cause under Rule 16 for failure to move to amend its complaint prior to the October 14, 2022 deadline. Second, under Rule 15's more forgiving standards, 9 Square's amendment will not prejudice Defendants.

**I.  Good Cause Exists Under Rule 16 Because of Newly Discovered Evidence.**

The newly discovered evidence at both October 27, 2022 and December 2, 2022 serves as good cause for 9 Square's failure to move to amend prior to the October 14, 2022 deadline. Although 9 Square should have pursued an extension to the scheduling order's amendment deadline after receiving Defendants' accompanying documents to their Initial Disclosures on October 27, 2022, the court determines that the one-month delay—between when 9 Square learned more information warranting amendment (December 2, 2022) and when 9 Square requested Defendants' stipulation to amend their complaint (January 6, 2022)—demonstrates adequate diligence—albeit barely. Therefore, the court concludes that 9 Square has met the good cause requirement under Rule 16.

Defendants argue that 9 Square fails to demonstrate diligence in pursuing its trademark infringement claims because 9 Square was on notice of these potential claims long before filing suit. However, Defendants have not pointed the court to any evidence indicating that 9 Square

---

[31] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotation simplified).

"knew of the underlying conduct but simply failed to raise their claims"[32]—besides the fact that in June 2020, the President of 9 Square contacted Defendants' representatives about their use of the phrase "9 Square in the Air."[33] Defendants operate on a hunch that 9 Square delayed seeking amendment[34] and asks the court to assume the same.

According to the initial complaint, 9 Square *was* on notice of Defendants' use of the name "9 Square in the Air" as early as June 2020.[35] At the complaint's filing, 9 Square was also aware that Defendants had referred to 9 Square and used the phrase "9 Square in the Air" as a tag on Defendants' blog.[36] However, as discussed at the March 1, 2023 hearing, after receiving Defendants' documents associated with their Initial Disclosures on October 27, 2022, 9 Square learned information about the likelihood of consumer confusion as a result of Defendants' use of the name "9 Square" and what Defendants had or had not done to mitigate this confusion. The evidence of actual consumer confusion and the alleged failure to remedy it are directly relevant

---

[32] *Husky Ventures*, 911 F.3d at 1020.

[33] ECF No. 30 at 9.

[34] "Plaintiff's failure to explain why it seeks to add substantive claims to its Complaint four months late when no discovery has been completed leads to only one plausible conclusion: Plaintiff knew of its claims but simply failed to raise them." ECF No. 30 at 7.

[35] ECF No. 27-2 at ¶ 26 ("In or around June of 2020, Castle began selling its game, originally even calling it '9 Square in the Air'—exactly the same name as 9 Square LLC's game. Only later did Castle change the name of its game to "9 Square Castlesquares"); ¶ 54 ("On June 23, 2020, Steven Otey, President of 9 Square LLC, emailed representatives of Castle and asked that they stop using the phrase '9 Square in the Air.' Defendant Ian Boggess replied to Mr. Otey's email that same day, stating that Defendants would halt that conduct. However, Defendants failed to do so.").

[36] ECF No. 27-2 at ¶ 41.

to 9 Square's ability to bring a colorable trademark infringement claim but was not known until two weeks after the amendment deadline.[37]

Certainly, once 9 Square first had notice of consumer confusion, 9 Square should have moved for an extension of the scheduling order's amendment deadline. To this point, Defendants rely on *Rennsli Corp. v. Winberg*.[38] In *Rennsli*, this court found that the plaintiff "ignored or simply took for granted . . . the procedural requirements to preserve the opportunity to move to amend the complaint."[39] However, there, the plaintiff *definitely* possessed enough information to move for leave to amend—and in fact, began drafting an amended complaint soon after it was on notice of an additional Defendant—but chose not to seek leave to file it until four months later and a month after the parties filed a joint motion to amend the scheduling order. In *Rennsli*, the parties did not even discuss extending the deadline to amend the pleadings as part of their stipulated motion.[40]

Here, the court recognizes that 9 Square required time to review the documents received from Defendants on October 27, 2022, and, further, did not have a complete picture of the "consumer confusion" issue and their complaint's failure to plead it until the parties' served their first set of discovery requests on December 2, 2022—two months after the deadline to amend

---

[37] The elements to prove trademark infringement under the Lanham Act are as follows: "(1) that plaintiff has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar mark' in commerce; and (3) that the defendant's use is likely to confuse consumers." *Utah Rep. Party v. Herbert*, 141 F. Supp. 3d. 1195, 1203 (D. Utah 2015) (citing 15 U.S.C. § 1125(a)).

[38] No. 2:20-CV-00247-JNP-JCB, 2021 WL 1381166 (D. Utah April 12, 2021).

[39] *Id.* at *3

[40] *Id.*

passed. Unlike the plaintiff in *Rennsli*, 9 Square did not ignore the deadline to amend pleadings, but rather, lacked the evidence necessary to seek leave to amend its complaint until December 2, 2022. Additionally, 9 Square sought leave to amend within one month of receiving more complete evidence about the factual basis for their proposed amended complaint and discussed that issue with Defendants. However, the parties were unable to agree to extend the pleading amendment deadline, which resulted in this motion. Consequently, this situation is materially different from *Rennsli*, and the court concludes that 9 Square satisfies its Rule 16(b)(4) burden.

## II.  9 Square Meets the Requirements for Amendment Under Rule 15.

Having established good cause, 9 Square must satisfy the standard for amendment under Fed. R. Civ. P. 15. Under Rule 15, leave to amend "shall be freely given when justice so requires"[41] and "[g]enerally, refusing leave to amend is only justified upon a showing of undue delay, bad faith, or undue prejudice to the opposing party."[42] Applying this standard, the court concludes that 9 Square is permitted to amend the complaint to add trademark infringement claims. Because Defendants argue only undue delay and undue prejudice, the court addresses only these arguments below.

### A.  Undue Delay

The court previously addressed untimeliness in conjunction with its Rule 16 good cause analysis. Therefore, the court finds that 9 Square provides an adequate explanation for its delay in seeking amendment prior to the expiration of the deadline, and the court does not find timeliness as a bar to amendment under Rule 15.

---

[41] Fed. R. Civ. P. 15(a).
[42] *Childers v. Independent Sch. Dist. No. 1 of Bryan Cty.*, 676 F.2d 1338, 1343 (10th Cir. 1982).

B. Undue Prejudice

Defendants have not demonstrated that they will be unduly prejudiced if 9 Square is permitted to amend its complaint. Prejudice is most often found when the amended claims arise out of a subject matter different from what was set forth in the complaint, raise significant new factual issues, and are offered shortly before or during trial.[43] "The [c]ourt's focus is not on whether amendment would be inconvenient, but whether there is any *undue* prejudice to Defendant is amendment were allowed."[44] "Generally speaking, the need to conduct additional discovery, without more, does not constitute undue prejudice."[45] Instead, "an amendment may be prejudicial if its timing prevents the defendant from pursuing a potentially promising line of defense."[46]

Although it may have been more convenient to the parties if Defendants had notice of the need to challenge trademark infringement claims, the fact that Defendants will need to conduct additional discovery and retain experts is not unduly prejudicial. 9 Square argues that the proposed amendments are "largely (if not completely) covered by the [discovery] requests" already propounded by the parties.[47] Similar to the Tenth Circuit's decision in *Minter*, although 9

---

[43] *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).

[44] *Hydro Eng'g, Inc. v. Petter Investments, Inc.*, No. 2:11-CV-139-TS, 2012 WL 2872628, at *3 (D. Utah July 12, 2012).

[45] *Id.*

[46] *Minter*, 451 F.3d at 1209.

[47] ECF No. 31 at 9.

Square's trademark infringement claims are different in form from trade dress infringement claims, the factual underpinnings and defenses significantly overlap.[48]

To the extent that the proposed amendments are not covered by the discovery already undertaken by the parties, 9 Square has agreed that Defendants may revise or propound new discovery.[49] Further, under the amended scheduling order,[50] Defendants' deadline to retain an expert is May 12, 2023—five months after 9 Square first sought Defendants' consent to amend their complaint.[51] Trial has not been scheduled. Therefore, Defendants ability to defend against 9 Square's proposed new trademark infringement claims will not be hampered and any prejudice Defendants may suffer does not rise to the level of undue prejudice. Further, granting 9 Square's motion comports with the policy underlying Rule 15(a), by allowing 9 Square to fully and fairly litigate its claims against Defendants. Thus, the court grants 9 Square permission to amend its complaint.

IT IS SO ORDERED.

DATED this 14th day of March 2023.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[48] *Minter*, 451 F.3d at 1208.

[49] ECF No. 30 at 18.

[50] ECF No. 26.

[51] ECF No. 30 at 18.